**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JORDAN ROWE, | CASE NO. 1:13-CV-01265 |
| Plaintiff, | JUDGE NUGENT |
| v. | MAGISTRATE JUDGE VECCHIARELLI |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff, Jordan Rowe ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1381 *et seq.* ("Act"). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

**I. PROCEDURAL HISTORY**

On May 18, 2007, Plaintiff filed applications for POD, DIB, and SSI, alleging a disability onset date of July 15, 1999.[1] (Transcript ("Tr.") 16.) Plaintiff's claims were denied initially and upon reconsideration, and Plaintiff requested a hearing before an

---

[1] At his administrative hearing, Plaintiff amended his alleged disability onset date to November 14, 2007. (Tr. 16.) The ALJ denied Plaintiff's motion to amend "in order to evaluate the entire adjudicatory period consistent with the order of remand from the Appeals Council." (*Id.*)

administrative law judge ("ALJ"). (*Id.*) On January 28, 2010, an ALJ held Plaintiff's hearing. (*Id.*) Plaintiff participated in the hearing, was represented by counsel, and testified. (*Id.*) A vocational expert ("VE") and a medical expert ("ME") also participated and testified. (*Id.*) On February 24, 2010, the ALJ found Plaintiff not disabled, and Plaintiff thereafter requested that the Appeals Council review the ALJ's decision. (Tr. 16, 91.) On May 27, 2011, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's unfavorable decision, and remanded the case for further proceedings. (Tr. 110.)

On December 1, 2011, a subsequent hearing was held in front of a new ALJ. (Tr. 16.) On February 1, 2012, the ALJ found Plaintiff not disabled. (Tr. 13.) On April 9, 2013, the Appeals Council declined to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1.) On June 7, 2013, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. Nos. 15, 21, 22, 23.)

Plaintiff asserts the following assignment of error: The ALJ erred by failing to obtain necessary evidence of Plaintiff's somatoform disorder as directed by the Appeals Council.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in March 1974 and was 25-years-old on the alleged disability onset date. (Tr. 28.) He had at least a high school education and was able to communicate in English. (*Id.*) He had past relevant work as a shipping clerk and a

material handler.  (*Id.*)

**B.     Medical Evidence**

   **1.     Medical Reports**

In May 1999, Plaintiff was hospitalized with complaints of abdominal pain.  (Tr. 353-381.)  Elizabeth Macintyre, M.D., believed that Plaintiff had idiopathic inflammatory bowel disease and Crohn's disease.  (Tr. 376.)  Plaintiff visited the emergency room in May 2000, again complaining of abdominal pain.  (Tr. 313-333, 351-352.)  Plaintiff reported no problems with his activities of daily living (ADL) or functional mobility.  (Tr. 324.)  The cause of his pain was unclear.  (Tr. 313.)  A colonoscopy from May 9, 2000, was normal.  (Tr. 308.)  Likewise, pathology reports from May 2001 were essentially normal.  (Tr. 340-341.)

On October 9, 2002, Edward Esber, M.D., from Akron Digestive Disease Consultants, wrote a letter to Brett Lashner, M.D., from The Cleveland Clinic, advising that Plaintiff's extensive workup for Crohn's disease was "inconclusive" (including several negative colonoscopies and small bowel follow-throughs).  (Tr. 411.)  In January 2003, Plaintiff began seeking services for his gastrointestinal (GI) complaints from The Cleveland Clinic.  (Tr. 455-522, 592-594, 749-836, 892-925.)  Plaintiff usually saw Dr. Lashner or Osama Malak, M.D., for treatment.  (Tr. 455-522, 592-594.)

In April 2003, Plaintiff visited the ER with complaints of abdominal pain.  (Tr. 430-433, 530-543.)  He was admitted for evaluation.  (Tr. 421, 484-485, 554-555, 821-822.)  His studies were negative for irritable bowel disease.  (Tr. 482.)  Other than ER visits for breathing complaints and dental pain, Plaintiff's records show a gap in medical

3

treatment from 2003 until April 20, 2011, when he visited the ER with complaints of low back pain. (Tr. 894-895.) Plaintiff did seek pain management services, however, during this period. (Tr. 455-483, 592-594, 749-836, 892-925.)

In November 2007, certified psychiatric nurse practitioner Joanne Schneider evaluated Plaintiff as part of an assessment for The Cleveland Clinic pain management program. (Tr. 772-775.) At that time, Plaintiff reported extreme pain and noted that he "reclines" for 16 hours per day. (Tr. 772-773.) Prior to her interview with Plaintiff, Ms. Schneider talked with Dr. Lashner, who advised that Plaintiff did not have Crohn's disease and that his pain was out of proportion to his GI disease. (Tr. 773.) Plaintiff's mental status examination was unremarkable with the exception of mild depression and the presence of a victim dynamic. (Tr. 774.) Ms. Schneider noted that Plaintiff exhibited extreme somatic preoccupation. (*Id.*) The diagnostic impression included irritable bowel syndrome, lumbar degenerative disc disease, pain disorder with medical and psychologic features, and questionable somatoform pain disorder. (*Id.*) Ms. Schneider recommended that Plaintiff participate in a chronic pain rehabilitation program, but he refused. (*Id.*)

In March 2008, Lokesh Ningegowda, M.D., saw Plaintiff, at the request of Dr. Lashner, for an irritable bowel syndrome evaluation. (Tr. 750-757.) Plaintiff reported that he had previously declined to participate in a pain rehabilitation program because he required a private bathroom and needed "10-12 hours to lie on the floor and scream in pain." (Tr. 750.) Dr. Ningegowda observed that Plaintiff's wife seemed "enabling" during the interview; for example, she became tearful when Plaintiff described his pain. (Tr. 752.) Dr. Ningegowda found that both Plaintiff and his wife exhibited positive

4

"catastrophizing" behavior with positive somatic pre-occupation. (*Id.*)

In April 2011, Plaintiff sought ER treatment for low back pain. (Tr. 890-891.) He was able to freely move all of his extremities. (Tr. 891.) He had bilateral paraspinal muscle tenderness along the lumbar spine, reproducible with flexion, extension, and rotation of the upper torso. (*Id.*) His distal neurovascular exam was intact, and he had no neurologic deficits. (Tr. 891.)

In June 2011, Jill Mushkat, Ph.D., examined Plaintiff in connection with pain management services. (Tr. 918-920, 922-925.) Plaintiff stated that he had never seen a psychologist or psychiatrist. (Tr. 918.) He was pleasant, cooperative, talkative, and very somatically preoccupied. (Tr. 919.) He denied having memory problems and stated that he had a "pretty photographic memory." (Tr. 919.) He complained of difficulty concentrating due to his pain, and noted that he was fairly depressed with his situation and had some mood changes, irritability, and anxiety at times. (*Id.*) Psychological testing indicated that he saw himself as severely disabled. (Tr. 920.) He was extremely preoccupied with his symptoms and diagnoses and with his physical functioning. (*Id.*) Dr. Mushkat observed that Plaintiff's records reflected that he was diagnosed with a somatoform disorder previously. (Tr. 918.) Dr. Mushkat diagnosed a depressive disorder and pain disorder with psychological factors. (Tr. 920.) Individual psychological intervention was recommended for increasing Plaintiff's coping skills. (Tr. 920, 925.)

    **2.**    **Agency Reports**

On July 30, 2007, state agency reviewing physician Gerald Klyop, M.D., offered

an opinion on Plaintiff's residual functional capacity, opining that Plaintiff could perform the full range of medium work. (Tr. 679-687.) Dr. Klyop concluded that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; stand and/or walk (with normal breaks) for about six hours total in an eight-hour workday; and sit for about six hours total in an eight-hour workday. (Tr. 680.) Dr. Klyop noted that the medical evidence of record showed that Plaintiff's labs and weight had been stable for more than six years, Plaintiff's migraines did not occur with significant frequency, and testing showed normal strength, sensation, and gait. (*Id.*)

## C.     December 2011 Hearing Testimony

### 1.     Plaintiff's Hearing Testimony

Plaintiff last worked for Cannon Metal where he loaded and unloaded trucks and assembled pallets of inventory. (Tr. 52.) He then went to nursing school, but was unable to finish the program because of his medical problems. (Tr. 53.) He was able to use a computer to conduct medical research about his condition and send emails. (Tr. 56.) He had a driver's license but had not driven for a full year. (Tr. 57.) "The only time I leave the house is when my wife drives me to the psychologist appointments, the doctor appointments, or the medical tests, and of course [to my hearing]." (*Id.*) Plaintiff lived in the basement of his mother's home with his disabled wife. (Tr. 58.) He had a good relationship with his wife, mother, and grandmother, but testified that he had lost all of his friends because he could not longer do all of the things he and his friends used to do together. (*Id.*) He testified that he sometimes helped out around the house, but that his wife and mother did most of the household chores and shopping. (Tr. 60.)

He stated that on a good day, he could probably prepare his own meals if he had to. (*Id.*)  He could watch TV, but could not concentrate on reading due to his pain.  (Tr. 61.)

Plaintiff took an average of 30 prescription pills per day.  (Tr. 50.)  He took Paxil for depression related to his pain.  (Tr. 47.)  He testified that he could not work due to his constant stomach and bowel issues.  (Tr. 69-70.)  He also had abdominal pain that shot up through his back.  (Tr. 70.)  At least ten days per month, Plaintiff would spend more than five hours per day in the bathroom.  (Tr. 72.)  He spent most of his days laying in bed or in the bathroom.  (Tr. 77.)  He testified that he was "all right" mentally. (Tr. 70.)

### 2. Vocational Expert's Hearing Testimony

A vocational expert testified at Plaintiff's hearing.  The ALJ asked the VE to assume an individual with Plaintiff's age, education, and work experience who could perform work at a medium level; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, or crawl.  (Tr. 79.)  The individual would be limited to tasks that are simple and routine and would be precluded from tasks involving high production quotas and strict time requirements and tasks involving arbitration, negotiation, or confrontation.  (Tr. 79-80.)  The VE testified that the individual could perform work as a laundry worker, a packager, and a wire worker.  (Tr. 80.)

The ALJ presented a second hypothetical to the VE that was the same as the first hypothetical but added that the individual would be limited to tasks involving superficial interactions with coworkers and the public.  (*Id.*)  The VE testified that the individual could perform all the jobs that the first hypothetical individual could perform.

(Tr. 81.)  The ALJ then asked the VE to change the first hypothetical so that the individual could perform work only at a light level of exertion.  (*Id.*)  The VE testified that the laundry worker and hand packager jobs would be eliminated, but that the individual could work as a wire worker, an electronics worker, or a bench assembler.  (*Id.*)

### III.   STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a

severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Act through December 31, 2007.

2. The claimant engaged in substantial gainful activity during the following years: 1999, 2000, and 2001.

3. However, there has been a continuous 12-month period during which the claimant did not engage in substantial gainful activity.

4. The claimant has the following severe impairments: gastrointestinal disorder variously diagnosed as colitis, irritable bowel syndrome, somatic pain disorder, and suspected Crohn's disease; fibromyalgia; migraine headaches; degenerative disc disease at the vertebral level of L5-S1 and Schmorl's nodes at T11 and L5; depression; and anxiety.

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

6. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, meaning he can lift and carry 20 pounds occasionally and 10 pounds

>    frequently. He can sit, stand, and walk for six hours in an eight-hour workday as defined in 20 CFR 404.1567(b) and 416.967(b) except he can occasionally climb ramps and stairs. He can never climb ladders, ropes, or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He can perform tasks that are simple and routine. He is precluded from tasks that involve high production quotas and strict time requirements. He is precluded from tasks that involve arbitration, negotiation, or confrontation. He is limited to tasks that involve superficial interaction with co-workers and the public. He is precluded from commercial driving. In addition, claimant will be required to be off task five percent of the time.
>
> 7. The claimant is unable to perform any past relevant work.
>
> 8. The claimant was born in March 1974 and was 25-years-old, which is defined as a younger individual age 18-49, on the alleged disability onset date.
>
> 9. The claimant has at least a high school education and is able to communicate in English.
>
> * * *
>
> 11. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 12. The claimant has not been under a disability, as defined in the Act, from July 15, 1999, through the date of this decision.

(Tr. 18-29.)

## LAW & ANALYSIS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in

the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.     Plaintiff's Assignment of Error

#### 1. The ALJ Erred by Failing to Obtain Necessary Evidence of Plaintiff's Somatoform Disorder as Directed by the Appeals Council.

At Plaintiff's first administrative hearing on January 28, 2010, Cathy Krosky, M.D., an independent medical expert, testified about Plaintiff's condition.  After reviewing Plaintiff's medical records and listening to his testimony, Dr. Krosky opined that Plaintiff suffered from a somatoform disorder that met the requirements of Listing 12.07.[2]  (Supplemental Transcript ("Supp. Tr.") 955.)  She based her opinion on notes

---

  [2]     Listing 12.07 deals with somatoform disorders and requires physical symptoms for which there are no demonstrable organic findings or known

from nurse practitioner Joanne Schneider and Dr. Ningegowda.[3]  (*Id.*)  The ALJ presiding over Plaintiff's first hearing rejected Dr. Krosky's opinion and determined that Plaintiff did not meet Listing 12.07.  (Tr. 97.)  The ALJ noted that Dr. Krosky offered no evidence to support her opinion that Plaintiff met Listing 12.07, other than the November 2007 report from Ms. Schneider: There was no evidence of any psychological treatment, counseling, or psychological hospitalizations, and there was no evidence that any treating or examining source diagnosed a somatoform disorder prior to November 2007 and no evidence that any treating or examining source suggested such a disorder after November 2007.  (Tr. 98.)

Plaintiff requested that the Appeals Council review the first ALJ's decision.  (Tr. 16.)  The Appeals Council concluded that the ALJ's decision was not supported by substantial evidence and remanded the matter for further proceedings.  (Tr. 111.)  Specifically, the Appeals Council found that "the medical evidence related to a possible somatoform disorder referenced by the medical expert appears fragmentary and under developed."  (*Id.*)  The Appeals Council determined that further consideration of the existence of a somatoform disorder was appropriate given Dr. Krosky's testimony at Plaintiff's hearing.  (*Id.*)  The Appeals Council's remand order instructed, in part:

Upon remand, the Administrative Law Judge will:

---

physiological mechanisms.  *See* 20 C.F.R. Pt. 404, Subpt. 404, App. 1, 12.07.

[3]   In November 2007, Ms. Schneider noted that Plaintiff exhibited extreme somatic preoccupation.  (Tr. 774.)  Her diagnostic impression included "questionable somatoform pain disorder."  (*Id.*)  In March 2008, Dr. Ningegowda noted that Plaintiff exhibited positive somatic pre-occupation.  (Tr. 752.)

12

>Obtain additional evidence concerning the claimant's somatoform disorder in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913). The additional evidence may include, a consultative examination and current mental medical examination with psychological testing and medical source statements about what the claimant can still do despite the impairment.

(Tr. 111-112.)  On remand, a new ALJ found that Plaintiff did not meet Listing 12.07. (Tr. 20.)  In finding this way, the ALJ noted that "no treating or examining source has opined that the clamant was disabled or limited to a degree greater than the assessment herein.  As mentioned, he has never sought psychiatric treatment or counseling or required hospitalization for any alleged psychiatric issue."  (Tr. 21.)  The ALJ specifically addressed Dr. Krosky's testimony from Plaintiff's first hearing and concluded that "the prior judge's conclusions with regard to the weight provided Dr. Krosky's opinion [on the issue of Listing 12.07] are supported by the record."[4]  (Tr. 22.) Furthermore, the ALJ compared the evidence of record to the requirements of Listing

---

[4]  The ALJ explained:

>The judge in the prior hearing admitted that there was no evidence that any treating or examining source diagnosed a somatoform disorder prior to November 2007 and no evidence that any treating or examining source suggested such a disorder after November 2007.  In addition, he noted that Dr. Krosky stated that there was no evidence of any psychological treatment, counseling, or psychological hospitalizations, and he concluded that Dr. Krosky ignored the fact that the claimant worked at substantial gainful activity levels in 2000 and 2001.  He also noted that the evidence showed that on only one occasion other than Ms. Schneider's report did any medical source suggest a somatic disorder.  In March 2004, following an epidural, a pain management doctor noted a diagnosis of "somatic/musculoskeletal" pain (Exhibit 5A).  The prior judge noted that even Ms. Schneider herself said the presence of a somatoform disorder was "questionable."  (Exhibit 5A).

>(Tr. 22.)

12.07 and determined that the evidence did not support a finding that Plaintiff's impairments met or equaled the listing.

Plaintiff argues that without the performance of a consultative examination and/or the presence of a medical expert at his second administrative hearing, the ALJ deprived him of a full inquiry into his somatoform disorder. According to Plaintiff, "the Commissioner's operations manual provides that the ALJ **must** obtain a medical expert's opinion when Appeals Council orders it," and thus the ALJ erred by failing to comply with the Appeals Council's order. (Plaintiff's Brief ("Pl.'s Br.") 10) (emphasis in original). The Commissioner responds that, contrary to Plaintiff's assertion, the Appeals Council did not order the ALJ to obtain a consultative examination and/or medical expert testimony. According to the Commissioner, the Appeals Council instructed the ALJ to obtain additional evidence concerning Plaintiff's somatoform disorder, and the ALJ complied with this instruction by obtaining Dr. Mushkat's June 2011 psychological evaluation of Plaintiff, which Plaintiff's attorney submitted following the Appeals Council's remand. (Tr. 918-920, 922-925.) For the following reasons, Plaintiff's assignment of error is not well taken.

An ALJ is not required to refer a claimant for a consultative examination unless the record establishes that such an examination "is *necessary* to enable the administrative law judge to make the disability decision." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). Further, it is within the ALJ's discretion whether to consult a medical expert at a claimant's hearing. See 20 C.F.R. § 404.1529(b).

14

Here, Plaintiff's assertion that the Appeals Council *ordered* the ALJ to obtain a consultative examination and/or medical expert testimony is incorrect; the Appeals Council's remand order clearly states that the ALJ should obtain additional evidence concerning Plaintiff's somatoform disorder, and that "[t]he additional evidence *may* include, a consultative examination and current mental medical examination with psychological testing and medical source statements about what the claimant can still do despite the impairment."  (Tr. 112) (emphasis added).  Thus, the plain language of the remand order indicates that the ALJ had discretion to decide whether a consultative examination or medical expert testimony was necessary to fully evaluate Plaintiff's somatoform disorder.  The ALJ wrote a detailed decision analyzing the medical evidence of record, including treatment notes from Plaintiff's most recent psychological evaluation by Dr. Mushkat, which took place after the Appeals Council remanded Plaintiff's case.  (Tr. 918-920, 922-925.)  The ALJ noted that Dr. Mushkat diagnosed Plaintiff with a depressive disorder and a pain disorder with psychological factors.  (Tr. 27, 920.)  While Dr. Mushkat observed that Plaintiff had somatic preoccupation with his health concerns, she did not diagnose Plaintiff with a somatoform disorder.  (Tr. 920.)  The ALJ had discretion in evaluating whether Plaintiff met Listing 12.07, and found that Plaintiff's most recent psychological evaluation as well as the other information already contained in the record provided him with sufficient information to make an informed determination on the matter.

Moreover, Plaintiff challenges only the ALJ's alleged failure to comply with the Appeals Council's order of remand; he does not argue that the ALJ erred in finding that Plaintiff's impairments do not meet or equal Listing 12.07, nor does Plaintiff attempt to

show that he meets the Listing.  Therefore, even if the Appeals Council had ordered the ALJ to obtain a consultative examination or medical expert testimony and the ALJ failed to do so, Plaintiff does not explain how this would change the outcome of his case.  Indeed, the ALJ specifically noted in his decision that Plaintiff "*does have a severe somatoform pain disorder*, and it is limiting, but simply not as limiting as the claimant asserts." (Tr. 26) (emphasis added).  Thus, the ALJ acknowledged the medical notes in the record suggesting that Plaintiff had a somatoform disorder, and even concluded that Plaintiff suffered from a severe somatoform disorder even though no treating physician had ever diagnosed it.  The ALJ acknowledged previous comments of a possible somatoform disorder, but ultimately explained, using great detail, how the severity of Plaintiff's mental impairments, considered singly and in combination, do not meet or equal the criteria of Listing 12.07 for somatoform disorders.[5]  (Tr. 20-22.)  Because Plaintiff has not challenged this finding, any argument on this point is deemed waived.

It is well settled that the party seeking remand bears the burden of showing that a remand is proper.  *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986).  Challenging only the ALJ's alleged failure to comply with the Appeals Council's remand order, Plaintiff has provided an inadequate basis to conclude that the ALJ failed to fully and fairly develop the record.  For the foregoing reasons, Plaintiff's

---

[5] The ALJ explained how the evidence supports only moderate limitations in all three of the "paragraph B" criteria of Listing 12.07.  (Tr. 20-22.)  To satisfy the "paragraph B" requirements of Listing 12.07, Plaintiff's mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  *See* 20 C.F.R. Pt. 404, Subpt. 404, App. 1, 12.07.

sole assignment of error does not present a basis for remand.

## VI.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: February 21, 2014

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**